01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 JOANNE M. QUIDING,                          )
                                               )
10        Plaintiff,                           )   Case No. C04-2415-MJP-JPD
                                               )
11        v.                                   )
                                               )
12 JO ANNE B. BARNHART, Commissioner           )   REPORT AND RECOMMENDATION
   Social Security Administration,             )
13                                             )
          Defendant.                           )
14 _____ )

15        Plaintiff Joanne M. Quiding proceeds through counsel in her appeal of a final decision

16 of the Commissioner of the Social Security Administration (the "Commissioner").  The

17 Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") under

18 Title XVI of the Social Security Act after a hearing before an Administrative Law Judge

19 ("ALJ").  For the reasons set forth below, the Court recommends that the final decision of the

20 Commissioner be affirmed and the suit dismissed.

21                        I.  FACTS AND PROCEDURAL HISTORY

22        Plaintiff is a fifty-three-year-old mother of two adult children.  AR 40-42, 191.  She has

23 an education through the eleventh grade and has held a variety of jobs, including welder,

24 nurse's aide, and babysitter.  AR 40-42, 100.

25        On January 27, 1994, plaintiff filed an application for SSI disability benefits, alleging

26 she had been disabled since January 1, 1994, as a result of arm impairments, headaches, bladder

REPORT AND RECOMMENDATION
PAGE -1

01  impairments, and difficulty breathing.  AR 191-92, 220.  The Commissioner, however, denied

02  plaintiff's application initially and upon reconsideration.  AR 216-19, 223-26.  A hearing before

03  an ALJ led to a finding of not disabled, but plaintiff appealed to the Appeals Council ("AC"),

04  which remanded the case for reconsideration.  AR 37-72, 485-88, 542-50.

05      A second hearing was held on February 16, 1999, following which an ALJ again found

06  plaintiff not to be disabled.  AR 73-116.  Specifically, the ALJ found that plaintiff was

07  incapable of performing past relevant work, but that she was capable of performing medium

08  work available in the national economy.  AR 73-116, 560-72.  Plaintiff again appealed, and the

09  AC remanded the decision for further administrative proceedings.  AR 621-26.

10      Following plaintiff's third hearing before an ALJ on December 9, 2002, again plaintiff

11  was found not to be disabled.  AR 18-36, 117-190.  The ALJ found plaintiff was not capable of

12  her past relevant work, but that she was capable of performing certain light work available in

13  the national economy.  AR 35-36.  Plaintiff appealed, but the AC denied her request for

14  review.  AR 11.  The ALJ's third decision therefore constitutes the final decision of the

15  Commissioner for purposes of this Court's review.  Plaintiff timely filed suit in this Court,

16  seeking review of the Commissioner's final decision.  Dkt. No. 1.

## II.  JURISDICTION

18      This Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§

19  405(g), 1383(c)(3).

## III.  STANDARD OF REVIEW

21      The district court may set aside the Commissioner's denial of social security benefits

22  when the ALJ's findings are based on legal error or not supported by substantial evidence in

23  the record as a whole.  *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th

24  Cir. 1996) (internal citations omitted).  Substantial evidence is defined as more than a mere

25  scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

26  accept as adequate to support a conclusion.  *Smolen,* 80 F.3d at 1279.  The ALJ is responsible

REPORT AND RECOMMENDATION
PAGE -2

01  for determining credibility, resolving conflicts in medical testimony, and for resolving

02  ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is

03  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

04  must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80

05  F.3d at 1292).

06       If the court determines that the ALJ erred, the court has discretion to remand for

07  further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

08  1990).  The court may direct an award of benefits where "the record has been fully developed

09  and further administrative proceedings would serve no useful purpose." *McCartey v.*

10  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

11           Such a circumstance arises when: (1) the ALJ has failed to provide legally
             sufficient reasons for rejecting the claimant's evidence; (2) there are no
12           outstanding issues that must be resolved before a determination of disability can
             be made; and (3) it is clear from the record that the ALJ would be required to
13           find the claimant disabled if he considered the claimant's evidence.

14  *Id*. at 1076-77.

15                          IV.  EVALUATING DISABILITY

16       As the claimant, Ms. Quiding bears the burden of proving that she is disabled within the

17  meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

18  Disability is defined as the "inability to engage in any substantial gainful activity by reason of

19  any medically determinable physical or mental impairment, which can be expected to result in

20  death, or which has lasted or can be expected to last for a continuous period of not less than

21  twelve months[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled only if her impairments

22  are of such severity that she is not only unable to do her previous work, but cannot,

23  considering her age, education, and work experience, engage in any other substantial gainful

24  activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B);

25  *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

26

REPORT AND RECOMMENDATION
PAGE -3

01         The Social Security regulations set out a five-step sequential evaluation process for

02   determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

03   20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that she is not

04   engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

05   claimant does so, then at step two, the claimant must establish that she has one or more

06   medically severe impairments or combination of impairments that limit her physical or mental

07   ability to do basic work activities.  If the claimant does not have such impairments, she is not

08   disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

09   impairment, the Commissioner moves to step three to determine whether the impairment meets

10   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

11   416.920(d).  A claimant who meets one of the listings for the required twelve-month duration

12   requirement is disabled.  *Id.*

13         When the claimant's impairment neither meets nor equals one of the impairments listed

14   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

15   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

16   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

17   to determine whether the claimant can still perform that work.  *Id.*  If the claimant is not able to

18   perform her past relevant work, then the burden shifts to the Commissioner at step five to

19   show that the claimant can perform some other work that exists in significant numbers in the

20   national economy, taking into consideration the claimant's RFC, age, education, and work

21   experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100.  If the

22   Commissioner finds the claimant is unable to perform other work, then the claimant is found

23   disabled and benefits may be awarded.

24                      V.  DECISION BELOW

25         On May 14, 2003, the ALJ issued his decision, finding, among other things:

26         1.        The claimant has not engaged in substantial gainful activity since the

REPORT AND RECOMMENDATION
PAGE -4

01    alleged onset of disability.

02    2.    The claimant has an impairment or a combination of impairments
            considered "severe" based on the requirements in 20 C.F.R. §
03          416.920(b).

04    3.    These medically determinable impairments do not meet or medically
            equal one of the listed impairments in Appendix 1, Subpart P,
05          Regulation No. 4.

06    4.    The undersigned finds the claimant's allegations regarding her
            limitations are not totally credible for the reasons set forth in the body of
07          the decision.

08          . . .

09    6.    The claimant retains the residual functional capacity to occasionally lift
            and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand
10          and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours
            in an 8-hour workday.  She has some limitations in grip and
11          manipulation, left worse than right.  She is limited to simple, structured,
            repetitive tasks due to possible concentration problems.  Due to possible
12          problems in dealing with supervisors, coworkers, and the general public,
            she needs to work at a product-oriented job with no close interaction
13          with other people.

14    7.    The claimant is unable to perform any of her past relevant work (20
            C.F.R. § 416.965).
15
16    8.    At the alleged onset date, the claimant was a "younger individual
            between the ages of 45 and 49" (20 C.F.R. § 416.963).

17    9.    The claimant is currently an "individual closely approaching advanced
            age" (20 C.F.R. § 416.964).
18
19    10.   The claimant has an 11th grade or "limited" education (20 C.F.R. §
            416.964).

20    11.   The claimant has no transferable skills from any past relevant work
            and/or transferability of skills is not an issue in this case (20 C.F.R. §
21          416.968).

22    12.   The claimant has the residual functional capacity to perform a significant
            range of light work (20 C.F.R. § 416.967).
23
24    13.   Although the claimant's exertional limitations do not allow her to
            perform the full range of light work, using vocational testimony and
            Medical-Vocational Rules 202.18 and 202.11 as a framework for
25          decision-making, there are a significant number of jobs in the national
            economy that she could perform.  Examples of such jobs include work
26          as:  a warehouse worker/material handler (DOT# 922.687-038) for

REPORT AND RECOMMENDATION
PAGE -5

which there are 208,000 jobs in the United States and 4,000 jobs in the State of Washington; an office cleaner (DOT # 381.687-018) for which there are 125,000 jobs in the United States and 3,300 jobs in the State of Washington; and a launderer (DOT# 361687-030) for which there are 54,000 jobs in the United States and 1,000 jobs in the State of Washington.  All of these jobs are light, unskilled positions.

14.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).

AR 35-36.

## VI.  ISSUES ON APPEAL

A.    Did the ALJ err by failing to provide the vocational expert with a hypothetical that accurately portrayed all of plaintiff's impairments?

B.    Did the ALJ err by improperly resolving the discrepancies between the vocational expert's testimony and the job descriptions he identified in the Dictionary of Occupational Titles?

## VII.  DISCUSSION

A.    The ALJ Provided an Accurate Hypothetical to the Vocational Expert.

Plaintiff argues that the ALJ erred by failing to provide a hypothetical to the vocational expert ("VE") that accurately portrayed all of her impairments.  Dkt. No. 13.  Specifically, she argues that the ALJ failed to include many of her mental impairments in his hypothetical and that the functional restrictions he did include in his hypothetical were "totally inadequate."  *Id.* Plaintiff complains about the way in which the ALJ weighed the medical evidence and argues that the ALJ "should have given Dr. Parlatore's opinions . . . great weight regarding plaintiff's mental functioning abilities."  *Id.*

In her response, the Commissioner argues that the ALJ's hypothetical accurately contained all of plaintiff's limitations that were supported by the record.  Dkt. No. 15.  Further, she argues that the ALJ properly weighed the medical evidence of record and concluded Dr. Parlatore's opinions were entitled to less weight than other physicians.  *Id.*

REPORT AND RECOMMENDATION
PAGE -6

01          1.      The ALJ Properly Evaluated the Medical Testimony.

02          This case involves a record of almost 800 pages, including the medical opinions of

03 more than a dozen medical doctors, vocational professionals, and psychologists. The ALJ

04 thoroughly documented these opinions, evaluated them, and explained the weight he accorded

05 them. AR 23-33.

06          An ALJ may disregard the opinions of a treating physician whether or not that opinion

07 is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where a treating

08 physician's opinion is not contradicted by another physician, it may be rejected only for "clear

09 and convincing" reasons supported by substantial evidence in the record. *Reddick*, 157 F.3d at

10 725. When a treating physician's opinion is controverted by other medical opinions, however,

11 the ALJ may only reject it if he provides specific and legitimate reasons based on substantial

12 evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v.*

13 *Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a

14 detailed and thorough summary of the facts and conflicting clinical evidence, stating his

15 interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v.*

16 *Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

17          Dr. Parlatore treated plaintiff for approximately one year. AR 767-92. He diagnosed

18 plaintiff with anxiety, depression, and affective disorders. He assessed her with marked

19 limitations in her ability to relate appropriately to co-workers and supervisors and with

20 moderate limitations in her ability to tolerate the pressures and expectations of a normal work

21 setting. AR 510-11. He also observed her to be "dejected," "sad," and "morose." AR 519.

22          The ALJ, however, discounted Dr. Parlatore's opinions, because they relied solely on

23 plaintiff's self-described symptoms, which the ALJ found to be "sadly lacking" in credibility.

24 AR 32. This rationale is well supported. Testing by Dr. Fitz suggested that plaintiff might be

25 malingering and "attempt[ing] to present herself in a negative fashion." AR 698-703.

26 Similarly, standardized testing performed by Dr. Gilbert showed plaintiff had "intentionally

01  fak[ed] bad or extreme[ly] exaggerat[ed] . . . symptoms." AR 493. He concluded that, while

02  plaintiff was depressed, it was difficult to determine accurately her capabilities. AR 493-94.

03      Norman Gustavson, Ph.D., the Medical Expert ("ME") called by the ALJ, agreed that

04  plaintiff was depressed, the test results were questionable, and plaintiff tended to "exaggerate

05  pathology." AR 157-62. Dr. Gustavson was the only physician to review plaintiff's entire file

06  and, upon doing so, concluded that her complaints of depression were consistent with the

07  record, but exaggerated. AR 162-65. Ultimately, he concluded that plaintiff had a fair ability

08  to relate to others and only moderate limitations on dealing with co-workers and the public.

09  AR 168-70. Given the range of doctors who found plaintiff's self-reporting unreliable, as well

10  as strong evidence of plaintiff's malingering and exaggerated claims, the ALJ did not err by

11  discounting the opinion of Dr. Parlatore.

12          2.      The ALJ's Hypothetical Was Accurate and Complete.

13      After a claimant has demonstrated that she has a severe impairment that prevents her

14  from doing their past relevant work, she has made a *prima facie* showing of disability. *Tackett*,

15  180 F.3d at 1100-01. The burden then shifts to the Commissioner at step five to demonstrate

16  that, in light of the claimant's RFC, age, education, and work experience, she can perform

17  other types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R.

18  § 404.1560(b)(3).

19      When the Medical Vocational Guidelines fail to describe accurately a claimant's

20  limitations, as they did in this case, the ALJ should use them as a framework in conjunction

21  with taking testimony from a Vocational Expert ("VE"). *Reddick*, 157 F.3d at 729; *Tackett*,

22  180 F.3d at 1101. The ALJ must provide the VE with an accurate and detailed description of

23  all the claimant's physical and mental limitations that are supported by the record. *Thomas v.*

24  *Barnhart*, 278 F.3d. 947, 956 (9th Cir. 2002); *Tackett*, 180 F.3d at 1101. An ALJ is free to

25  accept or reject restrictions in a hypothetical question that are not supported by substantial

26  evidence. *See Magallanes,* 881 F.2d at 756-57. A hypothetical that can be said to incorporate

REPORT AND RECOMMENDATION
PAGE -8

01  fairly plaintiff's functional limitations satisfies this requirement. *Thomas*, 278 F.3d at 956.

02        In this case, the ALJ's hypothetical appropriately described plaintiff's impairments that

03  were supported by the record.  The ALJ found that plaintiff suffered from the severe

04  impairments of "bilateral wrist problems, right elbow problems, obesity, depression, anxiety,

05  and a personality disorder."  AR 23.  In his hypothetical, he described someone with obesity,

06  epicondylitis ("tennis elbow"), back problems, and carpal tunnel that caused grip manipulation

07  problems, particularly in the left hand.  AR 179.  These restrictions accurately reflect plaintiff's

08  severe physical impairments.  The ALJ's hypothetical also accurately described plaintiff's non-

09  exertional limitations.  The ALJ specifically mentioned, depression, anxiety, and "a possible

10  personality disorder." *Id.*

11        Based on all of these impairments and the evidence of record, the hypothetical

12  restricted work to "fairly structured, repetitive sort of work, where you're dealing more with

13  things than people.  In other words . . . there may be some superficial interaction, but certainly

14  not working as a team or a group to accomplish whatever the employment objective is." *Id.*

15  He also restricted the exertional category to light. *Id.*  These restrictions are consistent with

16  plaintiff's impairments, particularly her difficulty dealing with stress and interacting with others,

17  and thus satisfy the ALJ's burden of providing a hypothetical that accurately portrays all of

18  plaintiff's impairments.

19

20                    B.     The ALJ Properly Resolved the Conflict Between the VE's Testimony
                             and the Dictionary of Occupational Titles.

21        Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the

22  VE's testimony regarding the types of jobs plaintiff could perform and the descriptions of those

23  jobs in the Dictionary of Occupational Titles ("DOT").  Dkt. No. 13.  She argues that the jobs

24  identified by the VE exceed the limitations of the hypothetical and that she cannot actually

25  perform them. *Id.*  Defendant responds that the ALJ properly resolved the conflict.  Dkt. No.

26  15.

REPORT AND RECOMMENDATION
PAGE -9

01       At step five of the disability-evaluation process, an ALJ may rely on the testimony of a

02  VE to determine whether there are a sufficient number of jobs in the economy that plaintiff is

03  capable of performing.  SSR 00-4p, at *2.  When there is a conflict between evidence provided

04  by the VE and the job descriptions provided in the DOT, however, neither source

05  automatically "trumps."  *Id.*  Rather, the ALJ must resolve the conflict by asking whether there

06  is a reasonable explanation for the discrepancy.  *Id.*  Reasonable explanations include specific

07  job descriptions that differ from the general descriptions in the DOT and the fact that the DOT

08  lists the maximum requirements of jobs.  *Id.* at *2-3.

09       The VE identified three jobs suitable for plaintiff:  warehouse worker, office cleaner,

10  and launderer.  AR 180-81.  Plaintiff argues that the warehouse-worker job was actually the

11  job of "coal sampler," which requires a significant amount of handling, manual dexterity, and

12  physical work that are incompatible with her impairments.  Dkt. No. 13.  As the Commissioner

13  points out, however, the coal-sampler position was not identified by the VE — there was

14  simply an error transcribing the job code.[1]  The ALJ's reference to the erroneous code in his

15  decision obviously was based on the error in the transcript.  Hence, the ALJ did not err in

16  relying on the VE's testimony with respect to the warehouse-worker job.

17       The ALJ's reliance on the VE's testimony with respect to the office-cleaner and

18  launderer positions is also free from legal error.  Plaintiff argues that some requirements of

19  these jobs are beyond her abilities in light of her impairments.  Dkt. No. 13.  For instance, she

20  argues that the launderer job requires too much dexterity and that the industrial-cleaner

21  position requires "medium" exertional work and dexterity.  *Id.*  The VE, however, explained

22  that the DOT titles covered a broad range of jobs and that the specific job types he identified

23  were subsets of those broad categories that corresponded only to "light" exertional work

24

25       [1]The warehouse-worker job was transcribed as number 922.687-038, but the correct

26  number is 922.687-058.  *See* http://www.oalj.dol.gov/public/dot/refrnc/dot09b.htm (Last visited September 16, 2005).

REPORT AND RECOMMENDATION
PAGE -10

01 | demands.  AR 180.  In other words, the VE explained that the jobs he identified could be

02 | performed by a person with plaintiff's impairments.  In light of the fact that the ALJ provided

03 | the VE with an accurate hypothetical and that the VE identified jobs consistent with that

04 | hypothetical, the ALJ did not err by relying on the VE's testimony to find that jobs existed in

05 | the national and local economy that the plaintiff could perform.

06 | VIII.  CONCLUSION

07 |      Although this Court has no doubt that Ms. Quiding is suffering from her impairments,

08 | the role of the Court is limited to reviewing the ALJ's decision to determine if the findings are

09 | supported by substantial evidence.  Where the evidence is susceptible to more than one rational

10 | interpretation, the Commissioner's conclusion must be upheld.  *Thomas*, 278 F.3d at 954.  In

11 | this case, the Commissioner's decision is free from legal error and supported by substantial

12 | evidence.

13 |      Accordingly, I recommend that the final decision of the Commissioner be affirmed and

14 | that the suit be dismissed.  A proposed Order accompanies this Report and Recommendation.

15 |      DATED this 13th day of October, 2005.

16

17

18 | JAMES P. DONOHUE
     United States Magistrate Judge

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE -11